[No. 2786.]

### SAMUEL CLUBB *v.* THE STATE.

1. WITNESS—PRACTICE.—A State's witness, in a trial for aggravated assault
   and battery, having testified to inculpatory facts, the defense proposed in
   rebuttal to introduce and examine the wife of the said State's witness,
   but, the State objecting because she was the wife of the State's witness,
   the defense was not permitted to do so. *Held*, that such evidence was
   competent, notwithstanding the conjugal relation of the two witnesses,
   and the court erred in excluding it. See the opinion *in extenso* on the
   subject.
2. AGGRAVATED ASSAULT AND BATTERY—CHARGE OF THE COURT.—It was
   agreed that the trial court should give the jury an oral charge, where-
   upon the court read to the jury all of the articles of the Penal Code re-
   lating to assault and battery and to aggravated assault and battery,
   from Article 484 to Article 498 inclusive; to which wholesale charge the
   defendant excepted as calculated to confuse the jury. *Held*, that the
   exception was well taken; that a charge should give the law applicable
   to the case and none other.

APPEAL from the County Court of Mitchell. Tried below
before the Hon. J. W. Pierson, County Judge.

The opinion discloses the nature of the case. The penalty
affixed by a verdict of guilty was a fine of twenty-five dollars.

John Clubb was the first witness for the State. He testified,
in substance, that he was the father of the defendant, seventy-
nine years old, and very robust for his age. Defendant was
twenty-four or twenty-six years old, and robust for his age. Be-
tween eleven and twelve o'clock on the night of February 22,
1883, the witness went to his room adjoining the dining room of
the Avenue hotel, in Colorado City, and went to bed. Presently
he heard his wife and Mrs. Wheeler talking so loud in the dining
room that he could not sleep. He requested them to make less
noise, and Mrs. Wheeler left. Presently Mr. Estes went into
the dining room and he and the wife of witness got to talking
so loud that they disturbed the witness, and he told them to de-
sist. The wife of witness then said that she would call on de-
fendant to make witness quit his quarreling and fussing. Wit-
ness told her to get him, and went himself to hunt defendant,
but not finding him returned to his room. Presently defendant

came to the door and said: "Pap, get up." Witness opened the door, when the defendant caught him by the shoulders, pulled him down, choked him and kicked him three times. Before that time and since the defendant had been an obedient, dutiful son, and had labored to support the witness and family.

Cross-examined, the witness said that while the loud talking was going on in the dining room he was in bed. He sang a verse of the hymn beginning "Come all ye lovers of the Lord," to offset the noise. He had been to prayer meeting that night. Witness did not curse when defendant came to his room. When he went to hunt defendant, witness did not say: "I can whip h—ll out of him the best day he ever saw." Hunted defendant to explain things and prevent a row. He looked for him at the theatre. He did not say on his return that he had sought the defendant unsuccessfully at a whore house. The witness had a "squabble" with his wife that night, but did not strike her. He and she had got along badly for a long time. "She has been a demon to me for years." Witness had been a member of the Baptist church for forty years.

Bart Estes testified, for the defense, that he went into the dining room at the hotel about half past nine o'clock, on the night of the difficulty, and engaged Mrs. Clubb in a conversation, talking in an ordinary tone. John Clubb was then in his room adjoining the dining room. He sang a hymn in a loud voice, and said that the talking disturbed him. Witness then left and went to bed, and afterwards heard John Clubb cursing. He heard a scuffle, and heard John Clubb say: "I will cut you, Sam, if you hit me with that chair."

John Henry, son-in-law of John Clubb, testified that he was at the hotel when the difficulty occurred. He heard John Clubb tell Mrs. Wheeler and Mrs. Clubb to make less noise, and later give the same directions to Mr. Estes and Mrs. Clubb. He told Mrs. Clubb that she must "shut up" or leave the house. Mrs. Clubb said: "No, but I will send for Sam, and have you put out." John Clubb then said "I will go and hunt Sam; I can whip h—ll out of him the best day he ever saw." He left and returned in about fifteen minutes, and said that he had been to a whore house but failed to find Sam. Before he left, witness heard defendant "fingering" his gun as though throwing in a cartridge. During his absence witness took his gun and hid it. After a while witness heard defendant turn John Clubb's latch and say: "Pap, open the door," speaking in an ordinary tone.

M

Presently he heard scuffling and saw defendant holding a chair between himself and John Clubb, and backing. John Clubb had a knife in his hand. John Clubb was arrested later and was released on bail. John Clubb and his wife lived very disagreeably together, and defendant had often acted as peacemaker between them.

The motion for new trial raised the questions discussed in the opinion, and alleged that the verdict was not supported by the evidence.

*Martin & Kennedy*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. Defendant was convicted of an aggravated assault and battery upon his father, John Clubb. Upon the trial John Clubb testified in behalf of the State, and in rebuttal of the State's evidence defendant offered as a witness Julia Clubb, the wife of the State's witness, John Clubb. It was objected by the district attorney that she was an incompetent witness, because she was the wife of John Clubb, and was offered to contradict the testimony of said John Clubb, and, in so testifying, she would be testifying against her husband. This objection of the district attorney was sustained, and the witness was not permitted to testify; to which ruling of the court the defendant excepted.

We do not think the witness was incompetent to testify in this cause. John Clubb, her husband, was not a party to the cause, and in testifying she would not be testifying against him within the meaning of Article 735 of the Code of Criminal Procedure. Mr. Wharton, in his work on Criminal Evidence, says: "The fact that a married person has testified in one way in a trial does not preclude the husband or wife from testifying precisely to the opposite. Such impeaching testimony is admissible, even though the effect be to discredit the party contradicted." (Whart. Cr. Ev., sec. 402.) This is not in conflict with *Roach* v. *The State*, 41 Texas, 261, because in that case it was proposed to impeach the testimony of the wife by proving by her husband statements made by her to him contradictory of her testimony. It was clearly not permissible to do this, because it would have been allowing the husband to testify to communications made to him by his wife while the marriage relation

subsisted between them. (Code Crim. Proc., Art. 734.) But in this case the witness was not offered to prove any such communications, but to prove facts of which she had a personal knowledge, which knowledge was not acquired from her husband, or through her marital relation with him.

Another error assigned is the charge of the court. It was agreed by the parties that the court might deliver to the jury an oral charge, which the court proceeded to do by reading to the jury all the articles of the Penal Code relating to assault and battery and to aggravated assault and battery, from Article 484 to Article 498, inclusive. This wholesale charge was excepted to by the defendant as calculated to confuse and mislead the jury, and we think the exception is well taken. A charge should give the law applicable to the facts of the case, and none other. It should be so adapted to the pleadings and evidence that a jury can not misunderstand its application. (Clark's Cr. Law, p. 515, note 204.)

Because of the errors we have noticed above, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered May 12, 1883.